| | |
|---|---|
| TIMOTHY L. JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NORA HUNT, ) | |
| ) | |
| Respondent. ) | |

On January 2, 2009, Timothy L. Jones ("Jones" or "petitioner"), a state inmate, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 [D.E. 1]. On November 12, 2009, Nora Hunt ("respondent") filed a motion for summary judgment [D.E. 6].[1] The court notified Jones about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 9]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On November 23, 2009, Jones filed a motion to appoint counsel [D.E. 11] and a response in opposition to the motion for summary judgment [D.E. 12]. As explained below, the court denies petitioner's motion to appoint counsel [D.E. 11] and grants respondent's motion for summary judgment [D.E. 6].

I.

Jones asks the court to appoint counsel based on his lack of knowledge of the law [D.E. 11]. No constitutional right to counsel exists in habeas corpus actions, see Pennsylvania v. Finley, 481

---

[1] When Jones filed the petition, he was confined at Columbus Correctional Institution, which is located in the Eastern District of North Carolina. Pet. 1. Presently, Jones is incarcerated at Piedmont Correctional Institution. See N.C. Dep't of Corr. Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/offendersearch.do?method=view (last visited Aug. 19, 2010). The North Carolina Department of Correction projects Jones' release date as October 11, 2010. See id.

U.S. 551, 555 (1987), but the court may appoint counsel if it determines that "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). This action does not present legally complex issues, and Jones has set forth his claims adequately. Thus, the interests of justice do not require the appointment of counsel. Accordingly, the court denies petitioner's motion to appoint counsel [D.E. 11].

II.

On July 27, 2006, a Robeson County Superior Court jury convicted Jones of assault with a deadly weapon inflicting serious injury. The court sentenced Jones to a term of 53 to 73 months' imprisonment. Attorney Robert Jacobson represented Jones at trial.

Jones appealed to the North Carolina Court of Appeals. On February 19, 2008, the North Carolina Court of Appeals found no error and affirmed. State v. Jones, No. COA 06-1718, 2008 WL 435087 (N.C. App. Ct. Feb. 19, 2008) (unpublished). Attorney L. Jayne Stowers represented Jones on appeal.

Through counsel, Jones filed a petition for discretionary review in the North Carolina Supreme Court. On April 10, 2008, the North Carolina Supreme Court denied the petition. See State v. Jones, 661 S.E.2d 887 (N.C. 2008) (unpublished).

On January 2, 2009, Jones, proceeding pro se, filed a section 2254 petition [D.E. 1]. Jones asks the court to vacate his conviction or order a new trial. Pet. 45.

According to the North Carolina Court of Appeals:

> The State's evidence tended to show the following facts. At the time of the alleged assault, defendant was living with his mother. Larry Oxendine, defendant's uncle, lived across the street, while Billy Locklear lived next door. On 29 May 2004, Locklear approached defendant while he was in his mother's yard and began arguing with defendant about $20.00 that Locklear had lent defendant the previous day. Oxendine saw the confrontation and took Locklear to his house so that Locklear could cool off. When Locklear returned to his house, however, he again approached

2

defendant, who was still outside, and demanded his money. The men argued, and Locklear threatened to "cut the tires off" defendant's car if he did not repay the money. Locklear further testified that, after the threat, he turned to leave and was suddenly struck in the head. He turned back around and saw that defendant had a stick in his hand. According to Locklear, defendant struck him in the head a second time as Locklear was falling to the ground. Locklear did not know how many times defendant ultimately struck him.

Locklear was taken to the hospital where he was diagnosed with a depressed skull fracture and subdural hematoma. He underwent brain surgery for removal of a blood clot underneath the skull. Locklear was in a coma for four days and was put on life-support for three days. As a result of the blow to his head, Locklear has experienced left-side weakness and is prescribed medicine to prevent seizures and pain.

On 7 March 2005, defendant was indicted for assault with a deadly weapon inflicting serious injury. At trial, defendant presented evidence that after Oxendine broke up the initial altercation with Locklear, defendant stayed outside working on his car. Oxendine began mowing defendant's mother's grass, but ran out of gas. Oxendine asked defendant to go to the store to get gas for the lawn mower. When defendant returned and pulled into his mother's driveway, Locklear approached the passenger side of defendant's car. Defendant drove slowly up the drive, with Locklear walking beside the car, cursing and arguing until defendant sped up the drive away from Locklear.

Defendant pulled the car under a shelter and began working on the inside of the car, while Oxendine got the gas can out of the car. Locklear came running toward the car, telling defendant that he had better have Locklear's money before dark or he would kill defendant, burn down his mother's building, and burn up defendant's car. Locklear was standing at the passenger door, but as defendant started to get out of the car, Locklear moved around the back of the car with his hand in his pocket. Defendant reached into the car and removed an ax handle, telling Locklear not to pull his hand out of his pocket because, according to defendant, he was afraid Locklear had a knife. Defendant testified that he hit Locklear on the arm to keep Locklear from pulling his hand out of his pocket and, when Locklear continued to try to pull his hand out of the pocket, defendant struck him again. The second blow glanced off Locklear's shoulder and hit Locklear's head. Defendant testified that when Locklear fell to the ground, a pocketknife fell out of Locklear's pocket.

The trial court denied defendant's request for an instruction on self-defense. The jury found defendant guilty of assault with a deadly weapon inflicting serious injury, and the trial court sentenced defendant to a presumptive range sentence of 53 to 73 months imprisonment.

Jones, 2008 WL 435087, at *1–2.

3

III.

In considering respondent's motion for summary judgment, the court views the evidence in the light most favorable to Jones and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–52 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court need not accept petitioner's "legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006) (quotations omitted) (discussing Rule 12(b)(6) of the Federal Rules of Civil Procedure); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009).

Habeas relief cannot be granted in cases where a state court considered a claim on the merits, unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state-court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)–(2). A state-court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision "involves an unreasonable application" of Supreme Court law (1) "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) if the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407;

4

see Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

The state court is not required to "cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one" and the federal habeas court is not required to "offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings." Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Jones seeks habeas relief on three grounds: (1) the trial court erred in failing to include a self-defense jury instruction in violation of his due-process rights under the Fourteenth Amendment of the United States Constitution; (2) the trial court erred in excluding evidence of prior inconsistent statements of a witness in violation of Jones' due-process rights under the Fourteenth Amendment of the United States Constitution and the North Carolina Rules of Evidence; and (3) the North Carolina Court of Appeals erred in concluding that Jones entered into the fight voluntarily and without lawful excuse, that the trial court properly denied Jones' request for a self-defense jury instruction, and that Jones was not prejudiced by the exclusion of a witness' prior inconsistent statement. Pet. 15–45.

In seeking summary judgment, respondent claims that Jones failed to raise his grounds for relief under the United States Constitution in the North Carolina Court of Appeals and North Carolina Supreme Court. See Mem. Supp. Mot. Summ. J. ("Mem. Supp.") 4. Thus, respondent argues that Jones has procedurally defaulted his claims and that this court may not consider Jones' grounds for relief. Id. at 4–5. Alternatively, respondent contends that Jones' grounds for relief are

not cognizable on federal habeas review, id. at 6–8, and lack merit. Id. at 8–14.

First, respondent argues that Jones procedurally defaulted his claims because he failed to raise them in state court as federal constitutional issues. Absent a valid excuse, a state prisoner must exhaust all available remedies in state court before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, a state inmate must properly present his claims to the state court. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). To properly present a claim, a state inmate must present to the state court the substance of his federal habeas corpus claim, including both the operative facts and the controlling legal principles. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29–33 (2004); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). This exhaustion requirement compels a habeas petitioner to "invok[e] one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

In his assignment of error submitted in the Record on Appeal in the North Carolina Court of Appeals, Jones assigned error to the self-defense and evidentiary issues under state law. See Mem. Supp., Ex. 1 at 33–34. Jones also assigned error on these grounds as federal constitutional issues. Id. In his appellate brief, however, Jones abandoned the assignments of error related to the self-defense instruction and prior inconsistent statement under the United States Constitution and proceeded strictly under state law. See Mem. Supp., Ex. 2. Therefore, Jones did not fairly present the substance of his federal habeas corpus claims to the North Carolina Court of Appeals. See, e.g., Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Pethtel v. Ballard, No. 09-6075, 2010 WL 3245437, at * 6–7 (4th Cir. Aug. 18, 2010).

In his petition for discretionary review in the North Carolina Supreme Court, Jones raised state-law claims concerning the trial court's denial of his request for a self-defense instruction and refusal to admit evidence of a prior inconsistent statement of a witness. See Mem. Supp., Ex. 2 at 9–22; Mem. Supp., Ex. 5 at 6–13. However, Jones failed to assert that his grounds for relief were based on his due-process rights under the United States Constitution. Thus, Jones did not properly present his claims to the North Carolina Supreme Court. See, e.g., Duncan, 514 U.S. at 366; Pethtel, 2010 WL 3245437, at * 6–7.

Ordinarily, this court would dismiss Jones' petition to permit him to exhaust the unexhausted claims in state court. However, in federal habeas cases, state-court remedies are deemed "exhausted" when they are no longer available regardless of the reason for their unavailability. See, e.g., Gray v. Netherland, 518 U.S. 152, 161 (1996). As the Supreme Court has explained:

> [I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.

Woodford, 548 U.S. at 93 (citation omitted); see O'Sullivan, 526 U.S. at 848. Thus, the court next addresses exhaustion and procedural default.

If Jones now filed a direct appeal or a petition for discretionary review with the North Carolina Supreme Court and tried to raise these federal claims, the claims would be barred under North Carolina's procedural-bar statute. See N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001) (recognizing procedural bar pursuant to N.C. Gen. Stat. § 15A-1419 is mandatory); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998) (holding § 15A-1419(a)(3) to be an independent and adequate state procedural bar). Thus, Jones'

7

claims are deemed exhausted. See Woodford, 548 U.S. at 93.

Simply because Jones' claims are deemed exhausted, however, does not mean that he may assert those claims in this federal habeas proceeding. See id. Indeed, respondent contends that Jones may not pursue his federal claims because they are procedurally defaulted. Moreover, respondent contends that Jones cannot demonstrate cause and prejudice to overcome the procedural default.

A petitioner who has procedurally defaulted a federal claim because it would now be procedurally barred in state court can overcome the default if the petitioner demonstrates cause and actual prejudice or a fundamental miscarriage of justice. See, e.g., Gray, 518 U.S. at 162; Coleman v. Thompson, 501 U.S. 722, 750 (1991); Baker, 220 F.3d at 288. To show cause, a petitioner must prove that something external to the petitioner prevented him from complying with the state procedural rule. See, e.g., Coleman, 501 U.S. at 753. To show prejudice, a petitioner must prove that he was actually prejudiced as a result of the alleged violation of federal law. See Strickler v. Greene, 527 U.S. 263, 289–90 (1999); United States v. Frady, 456 U.S. 152, 168–69 (1982). The prejudice inquiry focuses on fundamental fairness. See, e.g., Strickler, 527 U.S. at 289–90.

First, the court addresses whether Jones has established cause for his procedural default. Jones asks the court to excuse his default because he does not "know the law and what to do." Mem. Opp'n Mot. Summ. J. ("Mem. Opp'n") 1–2. Jones also states that he relied on his appellate counsel to present his post-conviction claims properly, and he "should not be held accountable for something [he does not] know." Id. at 2.

Jones' ignorance of the law is not cause. However, constitutionally ineffective assistance of counsel on direct appeal may constitute cause. See, e.g., Coleman, 501 U.S. at 753–54; Murray v. Carrier, 477 U.S. 478, 492 (1986). But in state court, Jones never claimed that he received

8

ineffective assistance of appellate counsel, and Jones may not use the alleged ineffective assistance of appellate counsel as "cause" in this federal proceeding without first satisfying the cause and prejudice standard with respect to the ineffective-assistance claim itself. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 450–51 (2000); Sanders v. Johnson, 191 Fed. Appx. 240, 243–44 (4th Cir. 2006) (per curiam) (unpublished); Swisher v. True, 325 F.3d 225, 231 (4th Cir. 2003). This he has failed to do; therefore, he has failed to establish cause. See, e.g., Swisher, 325 F.3d at 231. Moreover, Jones has not established prejudice. See, e.g., Strickler, 527 U.S. at 289–90; Frady, 456 U.S. at 168–69. Accordingly, Jones cannot overcome his procedural defaults concerning the jury instructions or the evidentiary ruling.

Alternatively, and in any event, Jones' claims fail on the merits. Jones contends that the trial court's refusal to instruct the jury on self-defense was prejudicial and violated his due-process rights under the Fourteenth Amendment. Before Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Supreme Court held that attacks on a state-court judgment based on erroneous jury instructions required a petitioner to demonstrate the trial was fundamentally unfair. See, e.g., Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Under the AEDPA, Jones must establish that the North Carolina Court of Appeals' conclusion concerning the failure to give the self-defense instruction violates the United States Constitution as a matter of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 405. The AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).

In considering Jones' claim that he was entitled to a self-defense jury instruction, the North Carolina Court of Appeals stated:

> [t]he right to act in self-defense rests upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right of self-defense. A person may exercise such force if he believes it to be necessary and has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time.

Jones, 2008 WL 435087, at *2. In North Carolina, the right of self-defense is available only "to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so." State v. Marsh, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977).

The North Carolina Court of Appeals summarized the incident between Jones and Locklear, and this court already has quoted that summary. See supra at 2–3 (quoting Jones, 2008 WL 435087, at *1–2). Of course, the court of appeals' factual findings concerning the incident are presumed correct. See, e.g., 28 U.S.C. § 2254(e)(1); Sharpe, 593 F.3d at 378. Moreover, Jones has not rebutted the factual findings of the court of appeals.

In applying the AEDPA in this case, this court has not located a United States Supreme Court case "holding that the right to present a defense includes a right to specific jury instructions at all, much less an instruction on any particular ground on which the criminal defendant has offered sufficient evidence to support a jury verdict." Taylor v. Withrow, 288 F.3d 846, 854 (6th Cir. 2002) (Boggs, J., concurring). Accordingly, the failure to give the self-defense instruction did not violate "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

10

Alternatively, even if this court assumes without deciding that clearly established federal law as determined by the Supreme Court of the United States recognizes that in certain circumstances refusing to instruct the jury properly on self-defense can so taint a verdict as to be a constitutional error, the facts here did not warrant the instruction. See, e.g., Withrow, 288 F.3d at 852–54. Although Jones may not have initiated or provoked the incident, he certainly continued the confrontation, he made no effort to withdraw or announce an intention to do so, and he used unreasonable force. Cf. State v. Hunter, 315 N.C. 371, 374, 338 S.E.2d 99, 102 (1986) ("[A] person is entitled under the law of self-defense to harm another only if he is without fault in provoking, or engaging in, or continuing a difficulty with another." (quotation omitted)). Moreover, Jones' fear or knowledge that Locklear typically carried a knife is immaterial to his theory that he acted in self-defense. Cf. State v. Brooks, 37 N.C. App. 206, 208, 245 S.E.2d 564, 565 (1978) (holding that where the defendant moved toward the victim, "the mere act of the victim in placing his hand in a pocket containing a knife" was not sufficient "to require the trial court to give an instruction upon the doctrine of self-defense").

Because Jones was not entitled to a self-defense instruction, no constitutional right was violated at trial or on direct appeal. See, e.g., Withrow, 288 F.3d at 852–54. Therefore, the court grants respondent's motion for summary judgment on ground one.

Second, Jones claims that the trial court erred in excluding evidence of Oxendine's prior inconsistent statement, and thus violated due process and the North Carolina Rules of Evidence. Pet. 28–36. Oxendine provided a statement to Detective Clark, an investigating officer, immediately after the incident. Id. at 28. Jones claims that Oxendine's statement to Detective Clark corroborates his testimony that Locklear threatened to kill him, and was, therefore, "relevant and material" to his self-defense claim. Id. at 28–29.

11

The North Carolina Court of Appeals noted:

> The report of the investigating officer, as read at trial by Detective Clark, stated that on the day of the offense, Oxendine told the Detective that "when [Oxendine] looked back at [Jones and Locklear], [Jones] was getting out of his vehicle with the ax handle and the victim was saying I'm going to kill you." At trial, however, Oxendine testified, "If there was a threat made, I didn't hear it." Subsequently, defense counsel called Detective Clark as a witness in order to have Detective Clark read his entire report into evidence. The trial court, however, sustained the State's objection and excluded any statements in the report that conflicted with Oxendine's trial testimony.

Jones, 2008 WL 435087, at *3. The North Carolina Court of Appeals then applied N.C. Gen. Stat. § 15A-1443(a).[2] The court of appeals held that if the trial court had allowed Oxendine's complete statement to come into evidence, it "could not have had any effect on the verdict," because the trial court properly rejected Jones' request for a self-defense instruction and the prior inconsistent statement was inadmissible as substantive evidence on the issue of self-defense. Id. at * 4 & n.2.

Jones has failed to demonstrate that the state court's decision on this evidentiary issue violates "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Jones also has failed to present clear and convincing evidence that the admission of Oxendine's complete statement would have changed the outcome. Thus, the court grants respondent's motion for summary judgment on ground two.

As for ground three, Jones argues that the North Carolina Court of Appeals erred in concluding that Jones entered into the fight voluntarily and without lawful excuse, that the trial court properly denied Jones' request for a self-defense jury instruction, and that Jones was not

---

[2]N.C. Gen. Stat. § 15A-1443(a) provides:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.

12

prejudiced by the exclusion of a witness' prior inconsistent statement. Pet. 37–45. This claim is cumulative and fails for the reasons already stated.

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to summary judgment, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the district court has adjudicated and denied a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Where a court dismisses a petitioner's constitutional claims on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 485.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

IV.

In sum, the court DENIES petitioner's motion to appoint counsel [D.E. 11] and GRANTS respondent's motion for summary judgment [D.E. 6]. The court DISMISSES Jones' petition for a writ of habeas corpus [D.E. 1] and DENIES a certificate of appealability. The Clerk of Court shall close the case.

SO ORDERED. This 19 day of August 2010.

JAMES C. DEVER III
United States District Judge